UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON SCHEAR, EDUARD STANCIU,
BAREKET DRORI, STELLA KIM, DANA
BEIERLE, MICHAEL MARTINEZ and ODIN
REDD, on behalf of themselves and others similarly
situated,

            Plaintiffs,

-against-

FOOD SCOPE AMERICA, INC. d/b/a MEGU
TRIBECA, MASAHIRO ORIGUCHI, KOICHI
YOKOYAMA and SALVATORE PICARDI,

            Defendants.

No. 12-CV-0594 (AT)

**Filed VIA ECF**

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
Attorneys for Defendants

Of counsel:

    Andrew P. Marks
    Adam Colón

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ............................................................................................ 1

II.   ARGUMENT ................................................................................................... 1

      A.    The Undisputed Evidence Demonstrates Compliance With The FLSA ............... 1

            1.    Direct Customer Communication Or Contact Is Not Required For
                  Tip Eligibility Under The FLSA ............................................................... 2

            2.    Megu's Busser/Stocker Is Properly In The Tip Pool ................................ 4

            3.    Megu's Runner/Expeditor Was Not In The Tip Pool ............................... 5

            4.    Event Coordinators Were Not In The Tip Pool ........................................ 6

            5.    Sushi Chefs Customarily And Regularly Receive Tips ............................. 6

      B.    Megu Did Not Retain Plaintiff's Tips In Violation Of New York State
            Law ................................................................................................................... 9

      C.    Plaintiff's Received The Required Minimum Wages Under State Law ............. 11

      D.    New York Law Does Not Impose Personal Civil Liability For Wages .............. 12

      E.    Plaintiffs Fail To Demonstrate Defendant Masahiro Origuchi Is Plaintiffs'
            Employer For Purposes Of The FLSA .............................................................. 15

III.  CONCLUSION .............................................................................................. 17

i.

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

CASES

*Andux v. Woodbury Auto Park, Inc.*,
30 A.D.3d 362, 816 N.Y.S.2d 181 (2d Dep't 2006) ...............................................14

*Arculeo v. On-Site Sales & Mktg., LLC*,
425 F.3d 193 (2d Cir. 2005)......................................................................................9

*Arencibia v. 2401 Rest. Corp.*,
831 F. Supp. 2d 164 (D. D.C. 2011) .........................................................................6

*Ash v. Sambodromo, LLC*,
676 F. Supp. 2d 1360 (S.D. Fla. 2009) .....................................................................7

*Barenboim v. Starbucks Corp.*,
21 N.Y.3d 460 (N.Y. 2013) .....................................................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................15

*Chao v. Vidtape, Inc.*,
196 F. Supp. 2d 281 (E.D.N.Y. 2002), *modified on other grounds*, 66 Fed. Appx. 261
(2d Cir. 2003)............................................................................................................15

*Damassia v. Duane Reade, Inc.*,
2005 U.S. Dist. LEXIS 9768 (S.D.N.Y. May 17, 2005)...........................................8

*Ershow v. Site Holdings, Inc.*,
1995 U.S. Dist. LEXIS 8908 (S.D.N.Y. June 26, 1995)..........................................14

*Garcia v. La Revise Assocs. LLC*,
2011 U.S. Dist. LEXIS 3325 (S.D.N.Y. Jan. 13, 2011).....................................2, 5, 7

*Gray v. Powers*,
673 F.3d 352 (5th Cir. 2012) ..............................................................................15, 16

*Ingrim v. MacDonald*,
2012 U.S. Dist. LEXIS 135100 (E.D.N.Y. Sept. 17, 2012).......................................5

*Lennon v. Miller*,
66 F.3d 416 (2d Cir. 1995)........................................................................................9

*Martin v. Spring Break '83 Prods., LLC*,
2012 U.S. App. LEXIS 15285 (5th Cir. July 24, 2012).............................................16

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Patrowich v. Chemical Bank,*
    63 N.Y.2d 541, 483 N.Y.S.2d 659 (1984) ........................................................13, 14

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
    582 F.3d 244 (2d Cir. 2009), *cert denied*, 131 S. Ct. 79 (2010) ..............................5

*Reese v. Lyons Equip. Co. Inc.,*
    436 B.R. 281 (W.D.N.Y. 2010) ...........................................................................14

*Renzler v. D.F. White, Inc.,*
    267 A.D.2d 443, 700 N.Y.S. 2d 487 (2d Dep't 1999) ..........................................14

*Robles v. Copstat Sec., Inc.,*
    2009 U.S. Dist. LEXIS 54963 (S.D.N.Y. June 29, 2009).....................................14

*Sampson v. MediSys Health Network, Inc.,*
    2012 U.S. Dist. LEXIS 103052 (E.D.N.Y. July 24, 2012)...................................16

*Samuels v. Mockry,*
    77 F.3d 34 (2d Cir. 1996)....................................................................................15

*Solis v. Cindy's Total Care, Inc.,*
    2012 U.S. Dist. LEXIS 1808 (S.D.N.Y. Jan. 5, 2012).........................................15

*Stoganovic v. Dinolfo,*
    61 N.Y.2d 812, 473 N.Y.S.2d 972 (1984) ......................................................13, 14

*Temple v. Bd. of Educ.,*
    322 F. Supp. 2d 277 (E.D.N.Y. 2004) ...................................................................9

*United Mine Workers of Am. v. Gibbs,*
    383 U.S. 715 (1966)...............................................................................................9

**STATUTES**

28 U.S.C. § 1367...........................................................................................................9

29 U.S.C. § 203................................................................................................1, 2, 3, 12

29 U.S.C. § 216...........................................................................................................12

29 U.S.C. § 255.............................................................................................................5

Fed. R. Civ. P. 56..........................................................................................................7

N.Y. Lab. Law § 190.3.................................................................................................13

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

N.Y. Lab. Law § 196-d ...................................................................................9, 10, 11

N.Y. Lab. Law § 651 .........................................................................................11, 13

N.Y. Lab. Law § 662 ...............................................................................................13

N.Y. Lab. Law § 663 ...............................................................................................13

**OTHER AUTHORITIES**

29 C.F.R. § 531.52 ....................................................................................................3

29 C.F.R. § 531.55 ....................................................................................................6

N.Y. Dep't of Labor Op. RO-09-0063 (Sept. 22, 2009) ........................................12

U.S. Dep't of Labor Opinion Letter FLSA 2009-12 (Jan. 15, 2009) .......................3

## I.   INTRODUCTION

In response to Defendants' motion, Plaintiffs have withdrawn their claim for unpaid overtime and judgment should be entered dismissing Plaintiffs' Second and Fourth Claims for Relief.[1] Thus the case boils down to the propriety of Megu's tip policy and whether Plaintiffs have offered admissible evidence demonstrating that the policy violated federal and/or state law. Because the standards, limitations periods (two/three years versus six years), and remedies (repayment of the tip credit versus repayment of tips received by improper participants) differ under federal and state law, the Court must examine the claims separately. As detailed below, Plaintiffs present no admissible evidence to dispute that Megu's tip pool did not comply with federal and state law and, therefore, Defendants are entitled to summary judgment on all Plaintiffs' remaining claims.[2]

## II.   ARGUMENT

### A.   The Undisputed Evidence Demonstrates Compliance With The FLSA

Defendants are entitled to summary judgment on Plaintiffs' First Claim for the tip credit under federal law because Megu's tip pool was compliant with the FLSA. The FLSA allows an employer to pay an employee a wage of $2.13 per hour if the employee receives tips in an amount sufficient to satisfy the minimum wage obligation (*i.e.*, $7.25 per hour) and certain other conditions have been satisfied.[3] 29 U.S.C. § 203(m). It is undisputed that Plaintiffs were aware

---

[1] Plaintiffs also acknowledged that they are no longer pursuing FLSA minimum wage claims for Plaintiffs Fai Lam and Aureliano Riego. Therefore, Defendants are entitled to summary judgment on these claims as well.

[2] Pursuant to District Court Judge Analisa Torres' individual practices, Defendants respectfully request oral argument in connection with this motion and have submitted a letter by email requesting the same.

[3] Because Megu was also required to comply with New York State minimum wage laws, at all times material hereto, it paid its employees a cash wage between $4.35 and $5.00 per hour. Thus, it took a tip credit under the FLSA between $2.25 and $2.90 per hour. Plaintiffs' First Claim for relief seeks to recover that tip credit for the Opt-in Plaintiffs.

that Megu was taking the tip credit and that the tips they received were more than sufficient to satisfy the minimum wage obligation. Although Plaintiffs also acknowledge that the statute allows "pooling of tips among employees who customarily and regularly receive tips," they contend that Megu's busser/stocker, runner/expeditor, event planner and sushi chef were improperly included in the tip pool because they did not regularly have direct interaction with customers. *Id.* Defendants are entitled to summary judgment because, as a matter of law, regular direct customer interaction is not required for tip pool participants and the undisputed facts show that Megu's tip pool was proper in all other respects.

### 1.   Direct Customer Communication Or Contact Is Not Required For Tip Eligibility Under The FLSA

The FLSA allows tip pooling among employees that "customarily and regularly receive tips." Plaintiffs, however, claim that regular direct customer interaction, essentially direct communication or contact, is a requirement for an employee to participate in a tip pool. It is not.

> In determining whether a participating employee is one who "customarily and regularly receives tips," courts in this Circuit and others focus on whether the employee in question is "part of an occupation that customarily and regularly receives tips," *or* whether they have more than "de minimis" interaction with customers as a part of their employment.

*See Garcia v. La Revise Assocs. LLC*, 2011 U.S. Dist. LEXIS 3325, at *15-16 (S.D.N.Y. Jan. 13, 2011) (internal citations omitted) (emphasis added). If the employee in question is legitimately part of an occupation that customarily and regularly receives tips, direct communication or customer contact is not necessary for that employee to share tips under the FLSA. For example, bussers typically clean tables after the customer has left and service bartenders fill drink orders placed by servers. Neither position has regular direct communication or contact with customers, yet both positions are permitted to be in the tip pool.

The FLSA regulations acknowledge that "whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity." 29 C.F.R. § 531.52. As such, a customer's perception as to who should receive a tip is a relevant consideration in determining whether the occupation is one in which the employee "customarily and regularly" receives tips. This interpretation is fully supported by the legislative history of the 1974 amendments to the FLSA. The legislative history explains that the tip credit permissible under Section 203(m) of the FLSA "applies to 'the practice of pooling, splitting or sharing tips with employees who customarily and regularly receive tips – e.g., waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc.'" and that, "'the employer will lose the benefit of [tip credit] if tipped employees are required to share their tips with employees who do not customarily receive tips – e.g., janitors, dishwashers, chefs, laundry room attendants, etc.'" U.S. Dep't of Labor Opinion Letter FLSA 2009-12 (Jan. 15, 2009) (citing S. Rep. No. 93-960, at 43 (1974)).[4] A comparison of the typical duties of the tip eligible and non-tip eligible positions discussed in the FLSA's legislative history demonstrates that the listed positions are not distinguished by the level of direct customer communication or interaction because busboys and service bartenders typically have little or no direct interaction with customers. Instead the customer's expectation of whom should receive a tip (whether directly or through a tip pooling arrangement) is what distinguishes the two categories. The positions listed within the legislative history as those that customarily and regularly receive tips are those that industry custom suggests customers historically believe should receive tips. Conversely the positions listed as those not eligible to share tips are those

---

[4] A copy of which is attached to the Declaration of Adam Colón dated November 18, 2013 ("Colón Dec.") as Exhibit A. The reality of an upscale restaurant such as Megu, which Plaintiffs admit in their counter 56.1 statement, is that most customers pay with credit cards entering a single gratuity rather than dole out cash to those employees who that customer felt enhanced the dining experience.

that customers typically do not expect will receive a tip. This interpretation of the FLSA is further supported by the United States Department of Labor ("DOL") in its own field operations handbook. Section 30d04(d) of the DOL's handbook explains that when determining the tip eligibility of positions not specifically listed, employers should look to "the practices regarding their sharing of tips in the locality and type of establishment involved."

Obviously, the employee's classification must be legitimate. An employer may not give a dishwasher the job title of waiter and claim he is tip eligible. But, if the job is one that customarily receives tips – such as sushi chef – whether a particular employee received tips from a particular customer on a particular day is irrelevant. Indeed, such a requirement for the validity of a tip pool would require a case-by-case, day-by-day analysis that would eviscerate the utility of any tip pool arrangement.

Accordingly, Plaintiffs' argument that Megu's busser/stocker, runner/expeditor, event coordinator and sushi chefs have minimal direct interaction with customers is irrelevant to the validity of Megu's tip pool

### 2.   Megu's Busser/Stocker Is Properly In The Tip Pool

Plaintiffs' argue that Megu's busser/stocker is improperly in the tip pool because he does not interact with guests and does not provide customer service. As explained above, however, direct customer interaction is not required. Moreover, Plaintiffs' claim is demonstratively false. As explained in detail in Defendants' initial memorandum, Megu's busser/stocker performs stocking duties in addition to traditional busser duties (*e.g.*, taking dirty dishes, glasses, and silverware back to the kitchen and ensuring that there are no items on the side stations that need to be bussed) during the same shift. In fact, Evaristo Zenteno, one of the Plaintiffs that actually worked as a busser/stocker, admitted that the busser assigned to the "stocker" position performs the same traditional busser duties which historically makes the busser position a tip eligible

4

position (*i.e.*, taking dirty dishes, glasses, and silverware back to the kitchen) but is simply assigned the additional stocking duties for that shift. (Zenteno Dep. 47:5-18, 68:3-8; 46:12-15).

Plaintiffs do not actually dispute the testimony of one of their own. Instead, they rely on the testimony of other Plaintiffs that they did not observe Mr. Zenteno or any other busser/stocker performing the traditional busser duties. Such testimony is self-serving and incompetent. "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009), *cert denied*, 131 S. Ct. 79 (2010). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *Ingrim v. MacDonald*, 2012 U.S. Dist. LEXIS 135100, at *38-39 (E.D.N.Y. Sept. 17, 2012). Plaintiffs' conclusory testimony that they never observed the stocker performing busser duties is not admissible evidence sufficient to defeat summary judgment. *See Garcia*, 2011 U.S. Dist. LEXIS 3325, at *20 ("The evidence of record also establishes that bartenders served customers directly; Plaintiffs' anecdotal evidence that they did not see the bartenders do so during their own work shifts is insufficient to raise a genuine issue of material fact . . .").

### 3.   Megu's Runner/Expeditor Was Not In The Tip Pool

Plaintiffs claim that the inclusion of the runner/expeditor in Megu's tip pool was unlawful should be dismissed as untimely. The FLSA's statute of limitation is two years, and can be enlarged to up to three years for willful violations. *See* 29 U.S.C. § 255(a). It is undisputed that Megu's runner/expeditor did not participate in the tip pool after January 24, 2010 (two years before Plaintiffs commenced this lawsuit). Thus, even if the runner/expeditor's

5

participation was improper – and for the reasons stated in Megu's initial memorandum of law it was not – such participation did not invalidate the tip credit under the FLSA.

### 4. Event Coordinators Were Not In The Tip Pool

The admissible evidence demonstrates that Megu adds a mandatory service charge to event contracts and, that for a period of time, Megu gave the event coordinator a portion of that service charge. (*See* Declaration of Alfredo Galvan dated September 4, 2013, ¶ 32 (Marks Dec. Ex. Z)). A mandatory service charge is not a gratuity under the FLSA. 29 C.F.R. § 531.55 (2012) ("A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip.").

Moreover, Plaintiffs fail to present any evidence that Megu treated service charges as tips and that event coordinators participated in the tip pool. Plaintiffs simply point to a single event coordinator offer letter dated October 2, 2008 (well before the FLSA statute of limitations) to support their conclusory allegation that Megu treated service charges as tips and, therefore, that event coordinators participated in Megu's tip pool during the applicable FLSA statute of limitations. This letter states that the event coordinator is not a tipped position. Moreover, a single offer letter is insufficient to create a genuine issue of material fact that event coordinators participated in the tip pool. In any event, because a portion of the service charge was given directly to the event coordinator, such monies never became part of the tip pool, and thus, no portion of the tip pool monies were given to the event coordinator. *See, Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 177 (D. D.C. 2011).

### 5. Sushi Chefs Customarily And Regularly Receive Tips

Plaintiffs assert that Megu's sushi chefs cannot participate in the tip pool because their primary duty is the preparation of food and because some Plaintiffs did not observe sushi chefs

providing customer service.[5]  Plaintiffs' conclusory statement that sushi chefs primary duty is the

production of food, supported by nothing more than Plaintiffs' opinion, cannot defeat summary

judgment.  *See* Fed. R. Civ. P. 56(c)(4).  Similarly, Plaintiffs' claims that some of them never

observed a sushi chef serving a customer or that some never observed customers sitting at the

sushi bar cannot serve as evidence to create material issue of fact.[6]  *See Garcia*, 2011 U.S. Dist.

LEXIS 3325, at *20; *see also* Fed. R. Civ. P. 56(c)(4).[7]

Even if Plaintiffs could present admissible evidence that sushi chefs did not regularly

serve customers (which they cannot), Megu's sushi chefs are still proper tip pool participants

because as the DOL has opined generally and found implicitly in its audit of Megu that sushi

chef is an occupation that customers perceive as customarily and regularly receiving tips.  *See*

Marks Dec. Ex. J; *Garcia*, 2011 U.S. Dist. LEXIS 3325, at *15-16.[8]

---

[5] Plaintiffs focus on the fact that the sushi bar "is not visible from all parts of the restaurant but, rather, is only visible from parts of the middle of the lower floor of the restaurant." (Pls. Mem. p. 4).  Plaintiffs' argument is preposterous.  Plaintiffs cannot dispute with any admissible evidence that the sushi bar was a focal point of Megu.  Moreover, the sushi bar would not be visible to a customer sitting five feet away from the sushi bar whose chair was facing the opposite direction.  Such "evidence" does not support the proposition that sushi chefs working at a visible sushi bar did not enhance the customer experience at the restaurant.

[6] Plaintiffs make a number of additional claims that they cannot support with any admissible evidence. (*e.g.*, "Sushi chefs spent 99% of their time either making sushi or prepping the sushi bar," "less than two percent of the restaurant's sushi orders were placed by customers seated at the sushi bar," etc.).  (*See* Plaintiffs' Counter 56.1 ¶¶ 40 and 43.)  Plaintiffs' claim that sushi chefs must receive at least $30 a month in tips *directly* from tips is not supported by the FLSA. (*See* Pls. Memo p. 11).  If the law were such, employees such as bussers, service bartenders and barbacks, who do not receive tips directly from customers would not be included as positions eligible to receive tips.

[7] Plaintiffs' claim that *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360 (S.D. Fla. 2009) presents identical facts to this case is incorrect.  Here, the admissible evidence, which Plaintiffs cannot dispute, demonstrates that sushi chefs served customers, sushi chefs took orders from customers and that sushi chefs even received tips from customers directly.

[8] Plaintiffs' argue that the Court should not consider the documents concerning prior DOL audits because such documents were not produced in discovery.  But Plaintiffs' discovery demands did not encompass these documents.  Plaintiffs requested "[a]ll documents concerning wage and hour investigations and/or audits of any Defendant or subsidiary of any Defendant by the federal and/or New York State Departments of Labor..." (Pls. Memo. pp. 5-6).  But in the definitions of their document requests, they

The reams of public comment regarding tipping sushi chefs demonstrates that sushi chef is an occupation that customarily and regularly receives tips. *See "How much of tip reaches the sushi chef?,"* Seattle Times, (Feb. 5, 2003), http://community.seattletimes.nwsource.com/archive/?date=20030205&slug=taste050 ("There typically is a server who brings you utensils, sake, etc., but the [sushi] chef, who is working right in front of you and talking to you, really seems to deserve the principal tip. 'Years ago I sat next to a 'regular' at the sushi bar in Honolulu who told me to roll up a fiver, put it in the chopstick cover and give it to the sushi chef.' I do that occasionally, but I still want to know how I should tip at a sushi bar if the chef is to get treated right.' Given my insatiable taste for sushi, that's a question I've often wondered myself. At least once a week I find myself bellying up to a sushi bar and putting myself in a sushi chef's hands, relying on servers to do little more than refresh my drinks, clear the occasional plate and deal with the bill. I usually leave a 20 percent tip, hoping it will be split fairly and appropriately") (Colón Dec. Ex. C); *Sushi Chef- Job*

---

only requested documents from January 24, 2006 to the present. Plaintiffs' document requests stated that "[a]ll document requests below include, unless otherwise specified, any and all documents relevant to the requests at any and/or all times within the Liability Period," which they define as "January 24, 2006 to the time of trial." (*See* Colón Dec. Ex. B).

Plaintiffs' argument that the DOL was silent with respect to Megu's tip pool is also incorrect. The DOL specifically requested that Megu provide information concerning its tip pool, even reviewing sample tip pool sheets and the written tip policy. Plaintiffs' citation to *Damassia v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768, at *10 (S.D.N.Y. May 17, 2005) is clearly distinguishable. In *Damassia*, the DOL letters submitted with defendants' summary judgment motion addressed the payment of civil penalties for child labor violations in a case where the issue related to the classification of assistant managers as exempt employees. This Court further explained that the letters failed to provide any details of the investigation. Here, the DOL materials not only provide details of the investigation, but the determination that Megu incorrectly calculated overtime at 1.5 times the New York State minimum wage for *tipped* employees, rather than 1.5 times the federal minimum wage minus the federal *tip credit*, required the DOL to first come to the conclusion that Megu's tip pool was valid.

Last, it is undisputed that, even though Megu's tip pool had some changes over the years, the tip pool has always included sushi chefs following the DOL's investigation and determination.

*Description, Salary and Career, Culinary Schools Connection*, Bill Beaman ("The average hourly wage . . . with the chance for . . . tips.") http://culinaryschoolsconnection.com/sushi-chef/ (last visited on Nov. 12, 2013) (Colón Dec. Ex. D); *See* Sushi Chef Payscale report providing national pay data of hourly tips ranging from $1.00 to $4.07. http://www.payscale.com/research/US/Job=Sushi_Chef/Hourly_Rate (last visited on Nov. 12, 2013) (Colón Dec. Ex. E).

In sum, because Megu's busser/stocker, runner/expeditor, event planner and sushi chef were not improperly included in the tip pool, Megu is entitled to utilize the FLSA tip credit and Plaintiffs' FLSA claim must be dismissed.

**B.    Megu Did Not Retain Plaintiffs' Tips In Violation Of New York State Law**

Because Plaintiffs' FLSA minimum wage claim must be dismissed (and they have withdrawn their FLSA overtime claim), there is no longer a predicate for federal court jurisdiction and the Court in its discretion, may dismiss the state law claims. *See* 28 U.S.C. § 1367 (c)(3); *see also, United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (same); *Temple v. Bd. of Educ.*, 322 F. Supp. 2d 277, 281-282 (E.D.N.Y. 2004) (same); *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005). However, if the Court decides to retain jurisdiction, the state law claim should be dismissed on the merits.

NYLL § 196-d is a tip misappropriation statute. Specifically § 196-d states:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee . . . Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee.

While courts have held that Labor Law § 196-d only permits tip pooling among waiters, busboys or similar employees, the express language does not require such.[9]   The express language simply states that the law does not affect the sharing of tips in these positions.   This law was adopted to "'end the unfair and deceptive practice of an employer retaining money paid by a patron under the impression that he is giving it to the employee, not [the] employer,'" with the last sentence being "added at the request of the restaurant and hotel industries to preserve the legality of the commonplace tip-splitting practices in [this] businesses." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 469 (N.Y. 2013) (internal citations omitted).   A Labor Law § 196-d claim does not exist where an employer is not retaining an employee's tips.   Plaintiffs do not contend that Megu's sushi chefs, runner/expeditor, busser/stocker or event coordinator are an employer or officer or agent of Megu.   Therefore, Plaintiffs' claims should be dismissed.

To the extent, however, that the Court determines Section 196-d regulates what employees can share  tips, courts and the New York State Department of Labor have interpreted section 196-d to prohibit employers from requiring employees to share tips with managers or employees who are not similar to bussers and waiters (non-service employees).   The record evidence, which Plaintiffs cannot dispute with any evidence, demonstrates that the runner/expeditor, stocker/busser and sushi chefs are all positions that provide sufficient service to customers making them tip eligible employees.   The busser/stocker and runner/expeditor are employees similar to busboys and service bartenders, and assist in providing personal service to guests.   The stocker duties are rotated among bussers.   The stocker also performs the very same duties of a busboy when not stocking the restaurant's stations.   Similarly, the expeditor duties are

---

[9] Plaintiffs' cite to the Second Circuit's decision in *Shahriar v. Smith & Wollensky Rest. Grp, Inc.*, 659 F.3d 234 (2d Cir. 2011) for the proposition that NYLL § 196-d bars the same tipping practices as the FLSA, but the court in *Shahriar* focused on the issue relating to the use of the tip credit and not to primarily which employees may share in tips.   As described in the following section, a violation of Section 196-d does not preclude the use of the tip credit under New York law.

performed by runners, whose primary duty is the provision of direct customer service.  Sushi chefs, such as those at Megu who work at a sushi bar, also provide direct customer service.  In fact the New York State Department of Labor has already determined that sushi chefs working at a sushi bar may participate in a tip pool.  (*See* Marks Dec. Ex. K).

Accordingly, Plaintiffs' claim under Section 196-d should be dismissed because Plaintiffs can present no admissible evidence disputing that each of the alleged tip ineligible positions assist in providing personal service to guests.

**C.     Plaintiffs' Received The Required Minimum Wages Under State Law**

Plaintiffs' Third Claim for Relief alleges that Megu did not pay employees the required minimum wage.   New York minimum wage law for tipped food service workers is currently $5.00 per hour, and the propriety of a tip pooling or sharing arrangement is irrelevant.   New York's Minimum Wage Act – Article 19 of the Labor Law – demonstrates that nothing precludes an employer from retaining tips in excess of that necessary to satisfy the minimum wage obligation.  Indeed, such excess tips are not wages. [10]  The cases Plaintiffs cite fail to address that § 196-d expressly states: "Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter."   Nor do these cases address New York's Department of Labor opinion that: "[A] violation of Section 196-d does not prevent an employer from paying a restaurant server the food service worker minimum wage.  Therefore . . . the employer would not be required, under the New York State Labor Law, to reimburse an

---

[10] New York Minimum Wage Act defines "wage" to include "allowances, in the amount determined in accordance with the provisions of this article, for gratuities . . ." N.Y. Lab. Law § 651(7).  *A fortiori*, gratuities in excess of the amount of the allowance under the Act are not wages and an action for violation of New York Labor Law 196-d is not a "wage claim" under of New York Labor Law 198 for which attorneys' fees and liquidated damages may be awarded.

employee for the difference between the minimum wage and the food service worker minimum wage . . ." N.Y. Dep't of Labor Op. RO-09-0063 (Sept. 22, 2009) (Colón Dec. Ex. F).

Plaintiffs' effort to conglomerate separate and distinct articles of the New York Labor Law to craft a limitation that the statute expressly declines to impose must be summarily rejected and summary judgment should be granted dismissing Plaintiffs' Third Claim for Relief.

### D.   New York Law Does Not Impose Personal Civil Liability For Wages

Plaintiffs claim that New York state and federal courts universally recognize that corporate officers, agents and shareholders may be individually liable as employers under NYLL. Plaintiffs cite decisions echoing a prevailing misconception that the FLSA standard applies under state law and completely fail to address the two New York Court of Appeals cases on point. Plaintiffs' argument is no substitute for legal analysis which, as Defendants demonstrated in their initial memorandum, leads to the conclusion that New York law does not impose upon the individual Defendants personal liability for wages that are allegedly owed by the corporate Defendant Megu.

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wage." 29 U.S.C. § 216(b). The definition of employer under the FLSA expressly "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). *A fortiori*, a person can be an FLSA "employer" when they act in the interest of the employer in relation to the employee – *e.g.*, hire and fire the employee, set wages and make schedules.

NYLL, on the other hand, takes a different tact using different statutory language. For purpose of Article 19 (Minimum Wage Act), "'Employer' includes any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons

12

acting as employer."[11]  N.Y. Lab. Law § 651.6.  With respect to unpaid minimum wages, NYLL

§ 663 authorizes a civil action "if any employee is paid by his employer less than the wage to

which he is entitled."  NYLL, unlike the FLSA, does not impose liability for an individual acting

in the interest of an employer, but instead only imposes civil liability on the employing entity.  It

is undisputed that Megu paid the Plaintiffs and was the employing entity here.  Managers,

supervisors and owners do not pay employees in their personal capacity, companies pay

employees.  Thus, it is the company that is the employing entity, not the manager or owner

(absent the piercing of a corporate veil).  This interpretation is made inescapable by the

immediately preceding section of the NYLL, imposing criminal liability for non-payment of

wage upon "[a]ny employer or his agent, *or the officer or agent of any corporation*, who pays or

agrees to pay to any employee less than the wage applicable under this article . . ."  N.Y. Lab.

Law § 662 (emphasis added).  The verbiage "officer or agent of any corporation" in this section

would be superfluous if "employer" already included such persons.

       This differential wording in adjacent sections of the labor law led the New York Court of

Appeals to conclude that officers and agents of a corporation are not personally liable for unpaid

wages under Article 6 of the labor law.  *Stoganovic v. Dinolfo,* 61 N.Y.2d 812, 473 N.Y.S.2d 972

(1984); *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 543, 483 N.Y.S.2d 659, 661 (1984)

("subjecting corporate officers to criminal sanctions for violation of the article indicates a

legislative intent that they *not* be subject to civil liability.").  Plaintiffs' claims for unpaid

gratuities and wages arise under Article 6.  And because the differential wording in adjacent

sections of criminal and civil liability in Article 6 is the same as that in Article 19, *Patrowich* and

*Stoganovic* require the summary dismissal of all of the NYLL claims against the individual

---

[11] NYLL § 190.3 contains a similar definition for purposes of Article 6:  "'Employer' includes any
person, corporation, limited liability company, or association employing any individual."

Defendants. *See, e.g., Robles v. Copstat Sec., Inc.*, 2009 U.S. Dist. LEXIS 54963, at *12 (S.D.N.Y. June 29, 2009) ("Agents and officers are not subject to liability under the Minimum Wage Act absent piercing of the corporate veil"); *Ershow v. Site Holdings, Inc.*, 1995 U.S. Dist. LEXIS 8908, at *16 (S.D.N.Y. June 26, 1995) ("The New York Court of Appeals has held that corporate officers are not subject to civil liability under the provisions of *New York Labor Law § 198*"); *Renzler v. D.F. White, Inc.*, 267 A.D.2d 443, 444, 700 N.Y.S. 2d 487, 488 (2d Dep't 1999) ("The Supreme Court erred in failing to dismiss the plaintiff's causes of action [for unpaid commissions] pursuant to Labor Law article 6 insofar as asserted against the individual defendants"); *Andux v. Woodbury Auto Park, Inc.*, 30 A.D.3d 362, 362, 816 N.Y.S.2d 181, 183 (2d Dep't 2006) (finding individual was not liable pursuant to Labor Law Article 6 for the obligations of the corporate defendant). *See also Reese v. Lyons Equip. Co. Inc.*, 436 B.R. 281, 284 (W.D.N.Y. 2010) (explaining the court was bound by the New York Court of Appeals' decision in *Stoganovic* in its dismissal of plaintiff's New York Labor Law claim against an owner and officer of a corporation).

Plaintiffs' arguments regarding individual liability under New York Law completely disregard the controlling authority that state law does not impose individual liability on owners or managers of a corporation. Plaintiffs mistake the concept that an individual can only be held as an employer under NYLL if that individual is the employing entity (*e.g.*, the individual is a sole proprietor who hires workers) with a concept of individual liability for managers and shareholders. Controlling state law on the issue clearly provides that individuals cannot be held liable as agents of the true employer. Plaintiffs may not avoid the holdings of *Patrowich* and *Stoganovic* by dint of substituting prepositions to claim that the individuals are liable "as the employer" rather than "for the employer."

14

Accordingly, Messers. Origuchi, Yokoyama and Picardi are entitled to summary judgment on Plaintiffs' state law claims asserted in their Third Claim for Relief.

### E.    Plaintiffs Fail To Demonstrate Defendant Masahiro Origuchi Is Plaintiffs' Employer For Purposes Of The FLSA

Plaintiffs have the burden of proving that Origuchi qualifies as an FLSA employer. *See Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). On an issue on which the plaintiff has the burden of proof, a defendant establishes entitlement to summary judgment in its favor by pointing to the absence of evidence supporting the plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where, as here, such a showing has been made, Plaintiffs can avoid summary judgment only by producing specific facts demonstrating there is a genuine dispute for trial. *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

Here Plaintiffs fail to provide evidence demonstrating that after appointing Yokoyama to run Megu, Origuchi did anything more than provide recommendations regarding Megu's operation. Plaintiffs attempt to claim there is "extensive" evidence demonstrating Origuchi's control over Megu, but at most the evidence Plaintiffs present merely demonstrates that Origuchi was informed of the restaurant's operations at times, which fails to demonstrate he engaged in the control envisioned by the economic realities test. Providing advice regarding the operation of Megu does not turn Origuchi into an FLSA employer. *See Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002), *modified on other grounds*, 66 Fed. Appx. 261 (2d Cir. 2003) (finding that an individual was not an employer, even though he was at the employer's premises, occasionally gave employees orders or directions, attended some employee meetings and employees believed he was a boss); *see also Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808 (S.D.N.Y. Jan. 5, 2012) (finding defendant who assisted in the management was not an employer because he did not engage in any independent managerial control over employees);

15

*Sampson v. MediSys Health Network, Inc.*, 2012 U.S. Dist. LEXIS 103052, at *13-14 (E.D.N.Y. July 24, 2012) (dismissing claims against individual defendants who lacked operational control over the workers in question); *Martin v. Spring Break '83 Prods., LLC*, 2012 U.S. App. LEXIS 15285, (5th Cir. July 24, 2012) (finding individual defendants not FLSA employers because they did not independently exercise control over plaintiffs); *Gray v. Powers*, 673 F.3d 352, 355-56 (5th Cir. 2012) (finding a status-based inference of control – defendant had authority to hire and fire merely because he was a member and officer of the company – cannot alone suffice to create a genuine fact issue that defendant had the power to hire and fire the employees in question).

Accordingly, because Plaintiffs have failed to meet their burden of demonstrating Origuchi engaged in the type of operational control envisioned by the economic realities test, Origuchi is entitled to summary judgment on Plaintiffs' federal claims asserted in their First Claim for Relief.

16

## III.   CONCLUSION

As detailed above and in Defendants' initial moving papers, Plaintiffs fail to present any admissible evidence demonstrating that Megu's tip pool does not comply with the FLSA and NYLL.  Further, Plaintiffs fail to demonstrate that Masahiro Origuchi's involvement in Megu is sufficient to show that he is an employer under the FLSA.  As such, the Court should grant Defendants' motion for summary judgment in its entirety and dismiss all of Plaintiffs' claims.

Dated:   November 18, 2013
       New York, New York

                                             s/ Andrew P. Marks
                                             Andrew P. Marks
                                             Adam Colón
                                             LITTLER MENDELSON, PC
                                             900 Third Avenue
                                             New York, NY 10022
                                             Tel:  212-583-9600

                                             *Attorneys for Defendants*

Firmwide:124212277.2 050517.1009