# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON SCHEAR, EDUARD STANCIU, BAREKET DRORI, STELLA KIM, DANA BEIERLE, MICHAEL MARTINEZ and ODIN REDD, on behalf of themselves and other similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>FOOD SCOPE AMERICA, INC. d/b/a MEGU TRIBECA, MASAHIRO ORIGUCHI, KOICHI YOKOYAMA and SALVATORE PICARDI<br><br>            Defendants. | Case No. 12 CV 0594 (AT)(GWG) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Jason Schear, Eduard Stanciu, Bareket Drori, Stella Kim, Dana Beierle, Michael Martinez and Odin Redd (collectively hereinafter "Plaintiffs"), individually and on behalf of a class of individuals they represent in the above-captioned matter, and Food Scope America, Inc. d/b/a Megu Tribeca ("Megu" or "The Company"), Masahiro Origuchi, Koichi Yokoyama and Salvatore Picardi (collectively hereafter "Defendants").

## 1.      RECITALS AND BACKGROUND

WHEREAS, a Class and Collective Action Complaint was filed on January 24, 2012, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York State law for the alleged failure to pay certain wages, overtime amounts and tips to Plaintiffs and all other employees who are similarly situated;

WHEREAS, on January 10, 2014, Judge Torres certified this litigation as a conditional collective action pursuant to 29 U.S.C., § 216(b), as well as a class action, pursuant to Fed. R. Civ. P. 23;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Plaintiffs and Defendants, including, claims asserted in *Jason Schear et al. v. Food Scope America, Inc., et al.* No. 12 Civ. 0594 (the "Litigation");

WHEREAS, Defendants deny all of the allegations made by Plaintiffs in the Litigation, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, in June 2014, the parties agreed to engage in settlement discussions in an effort to resolve the Litigation and agreed to pursue settlement of the Litigation before Magistrate Judge Gabriel W. Gorenstein;

WHEREAS, on July 8, 2014, the parties attended a settlement conference under the direction of Magistrate Judge Gorenstein but were unable to resolve the Litigation;

WHEREAS, on July 8, 2014, at the conclusion of the settlement conference, Magistrate Judge Gorenstein recommended a dollar amount to settle the Litigation and instructed the parties to consider that number and inform him as to whether or not they accept it (the "Magistrate's Proposal");

WHEREAS, on July 10, 2014, the parties accepted the Magistrate's Proposal and reached a settlement resulting in this Agreement;

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that tips and/or wages were improperly withheld from any employees, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs and members of the collective and class actions, and based upon Plaintiffs' Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs and the Class;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.    **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **Agreement.**  "Agreement" means this Settlement Agreement and Release.

1.2    **Acceptance Period.**  "Acceptance Period" means the one hundred and twenty (120) days that a Class Member has to endorse and cash a Settlement Check after it is mailed.

1.3    **Alternative Minimum Benefit.**  "Alternative Minimum Benefit" means the minimum settlement amount of One Hundred Dollars and Zero Cents ($100.00) for Class Members whose settlement allocation pursuant to 3.4(B) below falls below One Hundred Dollars

and Zero Cents ($100.00). This Alternative Minimum Benefit is considered to be 100% liquidated damages and is not subject to tax withholdings.

1.4 **Class Counsel.** "Class Counsel" shall mean D. Maimon Kirschenbaum, Esq. and Josef Nussbaum, Esq., Joseph & Kirschenbaum LLP, 233 Broadway, 5th Floor, New York, New York 10279, telephone: (212) 688-5640.

1.5 **Class List.** "Class List" means a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) social security number, and (iv) dates of employment within the Relevant Statutory Period, and (v) total hours worked as captains, servers, bussers, runners, bartenders and/or barbacks during the Relevant Statutory Period.

1.6 **Class Members.** "Class Members" shall mean all captains, servers, former bussers, former runners, bartenders and barbacks who are and/or were employed by Megu Tribeca at any time between January 25, 2006 and the date of preliminary approval, as defined in the Court's Memorandum and Order dated January 10, 2014. (Dkt No. 65.)

1.7 **Court.** "Court" means the United States District Court for the Southern District of New York, where the case is currently pending (the Honorable Judge Analisa Torres, presiding).

1.8 **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.9 **Defendants.** "Defendants" shall mean Food Scope America, Inc. d/b/a Megu Tribeca, Masahiro Origuchi, Koichi Yokoyama and Salvatore Picardi.

1.10 **Defendants' Counsel.** "Defendant's Counsel" shall mean Andrew P. Marks, Esq. and Christine L. Hogan, Esq. of Littler Mendelson P.C., 900 Third Avenue, New York, New York 10022.

1.11 **Effective Date.** "Effective Date" of the settlement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of an order by the District Court granting final approval to the Settlement, if there are no appeals; or (b) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

1.12 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.13 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement.

1.14 **Litigation.** "Litigation" means the above-captioned case.

1.15 **Named Plaintiffs.** "Named Plaintiffs" means Jason Schear, Eduard Stanciu, Bareket Drori, Stella Kim, Dana Beierle, Michael Martinez and Odin Redd.

**1.16    Net Settlement Fund.**  "Net Settlement Fund" means the remainder of the Qualified Settlement Fund (as defined below in 1.23) after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Awards to the Named Plaintiffs and Service Award Plaintiffs.

**1.17    Notice or Notices.**  "Notice" or "Notices" means the Court–approved Notices of Proposed Settlement of Class Action and Collective Action Lawsuit.

**1.18    Objector.**  "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.19    Opt-out Statement.**  "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

**1.20    Participating Class Members.**  "Participating Class Members" are all Class Members who do not submit a valid Opt-out Statement.

**1.21    Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, directing the manner and timing of providing Notices to the Class Members, and the time period for Opt-outs and objections.

**1.22    Qualified FLSA Class Members.**  "Qualified FLSA Class Members" means Jason Schear, Eduard Stanciu, Bareket Drori, Stella Kim, Dana Beierle, Michael Martinez, Odin Redd, Marvin Charles, Blake Skipper, Evaristo Zenteno, Edwin Leonzo, Simon Vasquez, Gregory Dann, Virginia Digaetano, Alex H Dutan, Claudio Fuentes, Khereed Haas, Ali Harassate, Christopher Harvey, Ahmeed Husan, Christian Jimenez, Carol Alejandro Lopez, Suman Maharjan, Samantha McGuiness (Measimer), Darwin Menendez, James Proctor, Mohd Rahim, Mustafizur Rahman, Pedro Ruiz Salas, Chubai Serpii and Lili Villacis.

**1.23    Qualified Settlement Fund or QSF.**  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendants.  The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

**1.24    Released Claims.**  "Released Claims" means all claims asserted, or wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation.  The Released Claims include all claims under federal or state laws for unpaid regular or overtime wages, any related wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date of the Preliminary Approval Order.

**1.25  Relevant FLSA Period.**  The "Relevant FLSA Period" refers to the period two (2) years prior to the date each respective Class Member affirmatively opted-into this litigation until July 30, 2014, if applicable.

**1.26  Relevant Statutory Period.**  The "Relevant Statutory Period" refers to the period between January 24, 2006 and July 30, 2014.

**1.27  Service Award Plaintiff.**  "Service Award Plaintiff" means Armando Anguiano, Marvin Charles, Alfredo Galvan, Fai Lam, Malik Muhammad and Evaristo Zenteno.

**1.28  Settlement Claims Administrator.**  The "Settlement Claims Administrator" or "Class Administrator" refers to the Settlement Claims Administrator selected pursuant to Section 2.2 to mail the Notices and administer the calculation, allocation, and distribution of the QSF. The Settlement Claims Administrator's fees shall be borne by the QSF.

**1.29  Settlement Amount.**  "Settlement Amount" means Eight Hundred Thousand Dollars and Zero Cents ($800,000.00), which is the maximum amount the Company will pay to settle the Litigation as set forth in this Agreement.

**1.30  Settlement Checks.**  "Settlement Checks" means the set of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**2.  INITIAL PROCEDURAL ISSUES**

**2.1  Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

**2.2  Retention and Responsibilities of the Settlement Claims Administrator.**

(A)  Within ten (10) days after the filing of a Motion for Preliminary Approval, the Parties shall engage a Settlement Claims Administrator whose fee shall be paid from the Qualified Settlement Fund.

(B)  The parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the parties, but no less frequently than every two (2) weeks, regarding the status of the mailing of the Notices to Class Members, the claims administration process, the identity and number of Class Members who object and/or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks,

(C)  The Settlement Claims Administrator shall also be responsible for: (i) preparing, printing and disseminating to Class Members the Class Notice, including resending any Class Notice returned with a new forwarding address; (ii) copying counsel for all Parties on material non-confidential correspondence; (iii) preparing, monitoring and maintaining a telephone number with phone answerers until the Final Effective Date or the termination of this Agreement whichever

comes first; (iv) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections, signed settlement checks or other written or electronic communications from Class Members which the Settlement Claims Administrator receives; (v) keeping track of requests for exclusion including maintaining the original mailing envelope in which the request was mailed; (vi) calculating the Settlement Checks in accordance with the Court's Final Approval Order; (vi) mailing the settlement checks to Qualified Class Members; (vii) distributing Service Awards; (viii) preparing and mailing Counsel's attorneys' fees, expenses, and costs and settlement payments in accordance with this Settlement Agreement and Order of the Court; (ix) issuing the W-2 and 1099 Forms for all amounts paid to the Class Members; (x) within five days of receipt, ascertaining current address and addressee information for each Class Notice returned as undeliverable and re-mailing of Class Notice to the current address; (xi) responding to inquiries of members of the Settlement Class regarding procedures for filing objections and opt-out forms; (xii) referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiii) responding to inquiries of Class Counsel and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (xiv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xv) maintaining adequate records of its activities, including the dates of the mailing of Class Notice(s) and receipt of returned mail and other communications and attempted written or electronic communications with Class Members; (xvi) confirming in writing to Class Counsel, Defendants' Counsel and the Court its completion of the administration of the settlement; (xvii) timely responding to communications from the Parties or their counsel; and (xviii) such other tasks as the Parties mutually agree. Other than as set forth herein, the Settlement Claims Administrator shall not initiate communications with any class members.

In addition, no later than five business (5) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendants' Counsel (a) a list of all Class Members who filed a timely objection, and (b) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. The Settlement Claims Administrator shall also provide Defendants with an updated address list for Class Members. Throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

(D)   Defendants agree to reasonably cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members.

**2.3**    **Preliminary Approval Motion.**

(A)    Within seven days following the parties' execution of this Agreement, Plaintiffs' counsel will file a Motion for Preliminary Settlement Approval, with (1) a memorandum of law in support thereof, (2) proposed Notice to Class Members, and (3) a proposed Order (together the "Preliminary Approval Motion").

(B)    The Preliminary Approval Motion will seek the setting of date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which date will be forty-five (45) days from the mailing of Notice to the Class Members, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C)    In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things, seek to: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs and Service Award Plaintiffs.

(D)    If the Court denies the Preliminary Approval Motion, unless the parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest the merits of the claims being asserted in the Litigation.

(E)    The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4**    **Notice to Class Members**

(A)    Within fifteen (15) days of the filing of Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the Class List, including the following information: (i) name; (ii) last known address; (iii) social security number, (iv) dates of employment within the Relevant Statutory Period, (v) total tips earned annually during the Relevant Statutory Period, and (vi) for Qualified FLSA Class Members, the total amount of hours worked during the Relevant FLSA Period.  Plaintiffs will identify the opt-in Plaintiffs and the date their respective consents were filed with the Court.

(B)    Within fifteen (15) days of The Company's provision of the information set forth in Section 2.4(A) to the Settlement Claims Administrator, the Settlement Claims Administrator will mail to all Class Members, via First Class United States Mail, postage prepaid, the Court–approved Notices of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

(C)     The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt one re-mailing.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5     Class Member Opt-outs.**

(A)     Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the Megu Restaurant tips settlement" ("Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked within forty five (45) days after the Settlement Claims Administrator mails the Notice.

(B)     The end of the time period to opt-out of the settlement ("Opt-out Period") shall be forty five (45) days after the day on which the Settlement Claims Administrator successfully mails a Notice to a Class Member.  Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable, will be allowed a second forty five (45) day period to opt-out from the date of the second mailing.  The Settlement Claims Administrator will not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than forty five (45) days after the first mailing to the Class Member.

(C)     The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice to any Class Member, notify Class Counsel and Defendants' Counsel in writing by email and by overnight delivery of the precise date of the end of the Opt-out Period.

(D)     The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements.  The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery.  The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will be issued a Settlement Check, which will contain a release of both their FLSA and New York State Labor Law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

**2.6**    **Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain forty-five (45) days after the Settlement Claims Administrator mails Notice to such Class Member. The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and first class mail no later than three (3) days after receipt thereof. The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)     An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7**    **Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)     Prior to the Fairness Hearing, Class Counsel will submit to the Court: Motions for Final Approval of Settlement, Payment of Service Awards and Payment of Class Counsel's Legal Fees and a Proposed Order Approving the Settlement and Dismissing the Litigation with prejudice ("Final Approval Order").

(B)     At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) approve the Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Settlement

Administrator to distribute Settlement Checks from the Net Settlement Fund to the Class Members, Service Awards, to be paid to individuals as described in this Agreement; (3) order the attorneys' fees and costs to be paid to Class Counsel from the QSF; (4) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not opt-out, subject only to an application for relief under Fed. R. Civ. P. 60(b)(1), or 60(d); (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction as necessary for the purpose of filing consent-to–join forms from the Class Members as set forth in their Settlement Checks and other relief.

(C)     If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)     If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

(E)     If the Court fails to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement.  The content of such notice shall be agreed to by the parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.

(F)     The Final Approval Order will order the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, (2) retain copies of all of the endorsed Settlement Checks with releases, and (3) provide Defendants' Counsel with the original or copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

## 3.    SETTLEMENT TERMS

### 3.1   Settlement Amount.

(A)     Defendants agree to pay a Settlement Amount of up to Eight Hundred Thousand Dollars and Zero Cents ($800,000.00) which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.  Defendants will not be required to pay more than Eight Hundred Thousand Dollars and Zero Cents ($800,000.00) under the terms of this Agreement.

    (B)    Defendants shall cause the Settlement Amount, equaling to Eight Hundred Thousand Dollars and Zero Cents ($800,000.00) to be paid to the Settlement Claims Administrator on the latter of ten (10) days after the Effective Date or December 15, 2014.

    (C)    The Settlement Claims Administrator shall deposit the Settlement Amount entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

    (D)    The Settlement Claims Administrator will mail the Settlement Checks within the latter of fifteen (15) days after the Effective Date or December 20, 2014.

    (E)    Class Members will have one hundred and twenty (120) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks. Class Members shall have an additional sixty (60) days to request replacement checks.

    (F)    Any un-cashed Settlement Checks or Service Awards and all amounts remaining in the QSF three hundred and sixty (360) days after distribution of the Settlement Checks will revert to Defendants.

**3.2**    **Settlement Amounts Payable as Attorneys' Fees and Costs.**

    (A)    At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than a third of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses to be paid from the QSF. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court. After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

    (B)    The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Any fees or costs sought by Class Counsel but not approved by the Court shall revert to the Net Settlement Fund.

    (C)    The attorneys' fees, expenses and costs shall be paid by the Settlement Claims Administrator to Class Counsel within the latter of fifteen (15) days after the Effective Date or December 20, 2014.

**3.3**    **Service Awards and Other Payments to Plaintiffs.**

    (A)    In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs Dana Beierle and Odin Redd will apply to the Court to receive no more than Six Thousand Dollars and Zero Cents ($6,000.00) as a Service

Award from the QSF.  Named Plaintiffs Jason Schear, Eduard Stanciu, Bareket Drori Stella Kim, and Michael Martinez will apply to the Court to receive no more than Five Thousand Dollars and Zero Cents ($5,000.00) as a Service Award from the QSF.  In addition, Service Award Plaintiffs Armando Anguiano, Marvin Charles, Alfredo Galvan, Fai Lam, Malik Muhammad and Evaristo Zenteno will apply to the Court to receive no more than Two Thousand Dollars and Zero Cents ($2,000.00) as a Service Award from the QSF.

(B)     The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.  Should all or part of any Service Award sought not be approved by the Court, the sum shall revert to the Net Settlement Fund.

(C)     Named Plaintiffs agree to the general release in Paragraph 4.1(c) in consideration for receipt of the Service Award, if any, and their respective share of the QSF.

**3.4     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Participating Class Members for Settlement Checks will be made from the remainder of the Qualified Settlement Fund after deductions for: (1) the Settlement Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named Plaintiffs and Service Award Plaintiffs; and (4) any fees associated with establishing, investing, or liquidating the Settlement Fund.

(B)     A Participating Class Member's proportionate share of the Qualified Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1)     A Participating Class Member's proportionate share of the Qualified Settlement Fund shall be determined by the Settlement Administrator pursuant to the formulas agreed upon by the Parties;

(2)     Notwithstanding the formulas agreed upon by the Parties, no Participating Class Member will be awarded a payment that is less than the Alternative Minimum Benefit, which equals $100;

(3)     Formula for Valuing the Disgorgement of Sushi Chefs' and Stockers' Tips Benefit:  The parties estimate the Disgorgement of Sushi Chefs' and Stockers' Tips Benefit claim to be valued at 80% of the Net Settlement Fund, which shall be allocated as a recovery of Disgorgement of Sushi Chefs' and Stockers' Tips, and shall be paid according to the following formula: (1) compute the total number of tips earned by each Participating Class Member during the Relevant Statutory Period; (2) divide the total number of tips earned by each Participating Class Member during the Relevant Statutory Period by the total number of tips earned by all

Participating Class Members during the Relevant Statutory Period; (3) multiply the amount derived in (2) by 80% of the remainder of the Net Settlement Fund after payments of any Alternative Minimum Benefits to compute the Participating Class Member's  "Disgorgement of Sushi Chefs' and Stockers' Tips Disgorgement Benefit."

(4)     Formula for Valuing the Disgorgement of Expeditors' Tips Benefit claim: The parties estimate the Disgorgement of Expeditors' Tips Benefit claim to be valued at 13% of the Net Settlement Fund, and shall be paid according to the following formula: (1) compute the total number of  tips earned by each Participating Class Member from January 24, 2006 until January 30, 2010 (the "Expeditor in the Tip-Pool Period"); (2) divide the total number of tips earned by each Participating Class Member during the Expeditor in the Tip-Pool Period by the total number of hours worked by all Participating Class Members during the Expeditor in the Tip-Pool Period; (3) multiply the amount derived in (2) by 13% of the Net Settlement Fund to compute the Participating Class Member's "Disgorgement of Expeditors' Tips Benefit;"

(5)     Formula for Valuing the Tip Credit Benefit claim:  The parties estimate the Tip Credit Benefit claim to be valued at 7% of the Net Settlement Fund, which shall be allocated as a recovery for lost Tip Credit Pay, and shall be paid according to the following formula: (1) compute the total number of  hours worked during the Relevant FLSA Period by all Qualified FLSA Class Members; (2) divide the total number of hours worked by each Qualified FLSA Class Members during the Relevant FLSA Period by the total number of hours worked by all Qualified FLSA Class Members during the Relevant FLSA Period; (3) multiply the amount derived in (2) by 7% of the Net Settlement Fund to compute the FLSA Class Member's "Tip Credit Benefit."

(6)     For each individual Participating Class Member, their "Net Settlement Payment" will be calculated by adding together the individual's Disgorgement of Sushi Chefs' and Stockers' Tips Benefit, Disgorgement of Expeditors' Tips Benefit, and Tip Credit Benefit.

(7)     Any monies remaining in the Net Settlement Fund after all payments have been made pursuant to this Agreement shall remain with and revert to the Defendant.  The Settlement Administrator shall issue such payment to Defendant no later than thirty (30) days following the end of the Acceptance Period.

**3.5     Tax Characterization.**

(A)     Settlement Checks paid to Class Members will be allocated 50% to W-2 wage payments and allocated 50% to 1099 non-wage payments for interest and liquidated damages.  Any Service Awards will be considered 1099 non-wage

income.  Any Class Member who is receiving an Alternative Minimum Benefit payment shall have 100% of their settlement allocated to 1099 non-wage income. All wage payments to Class Members shall be subject to applicable withholding taxes.

(B)     Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099.  Payments of attorneys' fees and costs pursuant to Section 3/2 shall be made without withholding.  Class Counsel will receive a Form 1099 for this payment.  Any service payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)     Defendants shall be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to Defendants' share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A). Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Payment, and shall not be paid out of the Settlement Payment.  The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

(D)     The Settlement Claims Administrator is responsible to issue and file appropriate forms associated with payments of any amounts to Class Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Class Members.

## 4.     RELEASE

### 4.1     Release of Claims.

(A)     By operation of the entry of Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement and except as otherwise provided below, the Named Plaintiffs Jason Schear, Eduard Stanciu, Bareket Drori, Stella Kim, Dana Beierle, Michael Martinez and Odin Redd (the "General Release Plaintiffs") only, each on their own behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys fully release and discharge Defendants and all of their parents, subsidiaries, related companies and affiliated entities and all of their

respective officers, directors, shareholders, employees, members, managers, co-joint venture, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, individually and jointly from any and all complaints, claims, damages, charges, demands, suits or actions, whether known or unknown, in law or in equity, that the General Release Plaintiffs ever had, now have or hereafter can, shall, or may have against any of the Defendants, that are based on acts or omissions from the beginning of time through the Effective Date of this Agreement, including but not limited to claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Fair Labor Standards Act, the Family and Medical Leave Act of 1993, the Employee Retirement Income and Security Act, the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law, the New York City Human Rights Law, New York Labor Law, the New York State Wage Theft Prevention Act and any other federal, state or local civil rights, retaliation, discrimination or labor laws, and/or contract or tort laws, with respect to any event, matter, claim, damage or injury arising out of or in any way connected with the General Release Plaintiffs' employment or the termination of that employment from Defendants ("General Release").

(B)     By operation of the entry of Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement and except as otherwise provided below, all Class Members, each on his or her own behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys fully release and discharge Defendants and all of their parents, subsidiaries, related companies and affiliated entities and all of their respective officers, directors, shareholders, employees, members, managers, co-joint venture, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, individually and jointly, from any and all individual or class and collective action wage and hour claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, liquidated damages, punitive damages, interest, penalties, actions, or causes of action, whether known or unknown, contingent or non-contingent, from the beginning of time through the Effective Date of this Agreement, including but not limited to all New York State wage and hour claims that were alleged or could have been alleged in the Litigation, all claims related to minimum wage violations, failure to provide wage and/or tip credit notification, tip misappropriation, unpaid wages, unpaid overtime, missed meal and rest periods, unpaid travel time, unpaid uniform reimbursements and maintenance allowances, unpaid waiting time and unrecorded time, nonpayment or inaccurate payment of tips, gratuities and wages under any state or local law, nonpayment or inaccurate payment of service charges under any state or local law, failure to pay the spread of hours premium, record keeping violations, waiting time penalties, claims for back or front pay, interest and other civil penalties, and any other

claims under the New York Labor Law, and any other state and local wage and hour law, regulation, order, opinion letter, and common law. It is agreed between the Parties that this release will have res judicata, collateral estoppel, claim preclusive, and/or issue preclusive effect as to all released claims made by or on behalf of any Class Member who has not submitted a valid Opt-Out Statement. In order to achieve a full and complete release of Defendants of all claims arising from or related to this Litigation, the Plaintiffs and Class Members acknowledge that this Agreement is meant to include in its effect all wage and hour claims that were or could have been asserted in the Litigation on or before the Effective Date of this Agreement, including claims that the Plaintiffs and Class Members do not know or suspect to exist in his or her favor against Defendants.

(C)   Each Qualified FLSA Class Members forever and fully releases Defendants from Released FLSA Claims.  "Released FLSA Claims" means all wage and hour claims that could have been asserted under the FLSA, as amended, by or on behalf of FLSA Class Members.  The Released FLSA Claims include all wage and hour claims that could be asserted in this Litigation, and any wage and hour claim that could be asserted against Defendants under federal law relating to the failure to pay wages, back wages, overtime, minimum wages, all "derivative benefit claims" (i.e., claims for benefits resulting from alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest, liquidated damages, penalties, attorneys' fees, and any other form of compensation or relief permitted under any federal laws.

(D)   Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

**4.2**   **Denial of Liability.**  Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation.  Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

**4.3**   **Non-Disparagement.**  Named Plaintiffs each agree not to make, directly or indirectly, and to cause their representatives not to make, directly or indirectly, to any person or entity, the press, and/or on the Internet, any website, media posting, blog, social media construct, any other media outlet, or otherwise, any negative or disparaging oral or written statements about, or do anything which damages, any of the Defendants, or its or their services, good will, reputation or financial status, or which damages the Defendants

or any of them in any of its or their business relationships (whether or not such statements legally constitute defamation).

## 5.    INTERPRETATION AND ENFORCEMENT

**5.1    Cooperation Between the Parties; Further Acts.**   The parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    No Assignment.**  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3    Entire Agreement.**  This Agreement constitutes the entire agreement between the parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

**5.4    Binding Effect.**  This Agreement shall be binding upon the parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5    Arms' Length Transaction; Materiality of Terms.**  The parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the parties in entering into this Agreement, unless otherwise expressly stated.

**5.6    Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7    Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8    Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9    Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of

law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10**   **Continuing Jurisdiction.**   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

**5.11**   **Waivers, etc. to Be in Writing.**   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12**   **When Agreement Becomes Effective; Counterparts.**   This Agreement shall become effective upon its execution.  The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

**5.13**   **Facsimile and Email Signatures.**   Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR ATTORNEY, D. MAIMON KIRSCHENBAUM, AND/OR JOSEF NUSSBAUM, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**WE AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

JASON SCHEAR

_____    By: _____
Date                               Jason Schear

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

EDUARD STANCIU

_____    By: _____
Date                               Eduard Stanciu

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

BAREKET DRORI

_____    By: _____
Date                               Bareket Drori

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

STELLA KIM

_____    By: _____
Date                               Stella Kim

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

JASON SCHEAR

_____     By: _____
Date                             Jason Schear

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.**

EDUARD STANCIU

6/10/2014     By: _____
Date                             Eduard Stanciu

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.**

BAREKET DRORI

_____     By: _____
Date                             Bareket Drori

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.**

STELLA KIM

_____     By: _____
Date                             Stella Kim

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.**

JASON SCHEAR

_____          By: _____
Date                                  Jason Schear

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.


EDUARD STANCIU

_____          By: _____
Date                                  Eduard Stanciu

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.


BAREKET DRORI

____10/6/14_____          By: _____
Date                                  Bareket Drori

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.


STELLA KIM

_____          By: _____
Date                                  Stella Kim

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.