UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

JASON SCHEAR, EDUARD STANCIU, BAREKET
DRORI, STELLA KIM, DANA BEIERLE, MICHAEL
MARTINEZ and ODIN REDD, on behalf of
themselves and other similarly situated,

           Plaintiffs,

    v.

FOOD SCOPE AMERICA, INC. d/b/a MEGU
TRIBECA, MASAHIRO ORIGUCHI, KOICHI
YOKOYAMA and SALVATORE PICARDI,

           Defendants.

12 CV 0594 (AT)

## DECLARATION OF JOSEF NUSSBAUM

I, Josef Nussbaum, under penalty of perjury, affirm as follows:

1.      My name is Josef Nussbaum, and I am an associate with Joseph & Kirschenbaum LLP ("JK"), Class Counsel in the above-captioned matter.  I am familiar with the facts and circumstances set forth herein.

2.      I submit this declaration in support of Plaintiffs' motion for final approval of class action settlement.

### Nature of The Claims and Procedural History

3.      Plaintiffs were food-service employees of the former Megu restaurant in the Tribeca area of Manhattan.

4.      In January 2012, Plaintiffs filed this lawsuit against Defendants asserting that Defendants violated the Fair Labor Standards Act and New York Labor Law.

5.      In January 2014, the Court certified this case as Fed. R. Civ. P. Rule 23 class action, and appointed Joseph & Kirschenbaum LLP Class Counsel ("J&K" or "Class Counsel"). *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014) (Torres J.).

6.      In the summer of 2014, the Parties reached a settlement in which Defendants agreed to pay the class $800,000.

7.      This settlement was finally approved by the Court in February 2015 and, shortly thereafter, judgment was entered against the Defendants/Judgment-Debtors, jointly and severally, for $800,000 (the "Judgment"). Dkt. Nos. 141, 146.  The Court Ordered that the Judgment be apportioned as follows:

1)  One-third of the Judgment as attorneys' fees;

2)  All J&K's attorney's costs and expenses, totaling $7,943.72;

3)  Reasonable fees of the settlement claims administrator;

4)  Enhancement Awards of $6,000 to Plaintiffs Dana Beierle and Odin Redd; $5,000 to Plaintiffs Jason Schear, Eduard Stanciu, Bareket Drori, Stella Kim, and Michael Martinez; and $2,000 to Opt-in Plaintiffs Armando Anguiano, Marvin Charles, Alfredo Galvan, Fai Lam, Malik Muhammad and Evaristo Zenteno; and

5)  The balance of the Judgment (after the abovementioned payments in sections 1-4) was to be distributed to all class members based on predetermined formula set forth in the settlement agreement.

8.      As part of the Final Approval Order, the Court also retained jurisdiction to supervise and enforce the settlement. *See* Dkt. No. 141 at ¶ 16 ("Without affecting the finality of this Judgment and Order, the Court reserves continuing and exclusive jurisdiction over parties to the Settlement Agreement to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the parties.").

**Collections Efforts**

9.      The Judgment-Debtors never willingly made any payments towards the Judgment.

10.     Shortly before the Court finally approved the settlement, the Corporate Defendant, Food Scope America, Inc., filed an assignment for the benefit of creditors and began liquidating all its assets.

11.     Accordingly, in March 2015, J&K retained Warner & Scheuerman ("W&S" or "Collections Counsel") to pursue collections efforts against the Judgment-Debtors.

12.     To date, W&S has been successful in collecting $61,748.26 of the Judgment.

13.     In December 2015, our firm recovered an additional $29,775.68 of the Settlement Amount, from Megu's assignment to the benefit of creditors. Dkt. No. 152.

14.     Thus, the total that has been collected/recovered to date is $91,523.94.

15.     For the last four years, W&S has pursued collection efforts in New York against Judgment Debtors.

16.     Significantly, W&S initiated a turnover proceeding in connection with an account holding $495,793.24 at Citigroup held in the name of Guchimen NY LLC, a New York State LLC (the "Turnover Proceeding").  *See Schear et al v. Citigroup, Inc. et al,* 159986/2015 (N.Y. Supreme Court).

17.     Despite W&S's and J&K's exhaustive collection efforts over the past four years, the account in the Citigroup Turnover Proceeding is almost certainly the only remaining potential asset that could be collected to pay the judgment in the class action.

**Proposed Resolution of the Turnover Proceeding**

18.     The account-holders in the turnover proceedings have raised credible arguments that the funds held in the account do not belong to Mr. Origuchi and that the bank incorrectly

included his name as an account-holder.  Specifically, Counsel for Mr. Origuchi in the Turnover

Proceeding argued that under CPLR § 5225(b) a court is required to engage in a two-step process

to determine when money or property in the possession of a third party must be turned over to a

judgment creditor.   Specifically, Plaintiffs must first show that Mr. Origuchi has an interest in

the assets Plaintiffs seek to reach. *Beauvais v. Allegiance Sec. Inc*., 942 F.2d 838, 840 (2d

Cir.1991).  Second, Plaintiffs must establish that Origuchi is entitled to possession of those

assets, or that Plaintiffs' rights to the property are superior to those of the garnishee. *Id.; see also*

*Key Lease Corp. v. Man. Hanover Trust Co*., 499 N.Y.S. 2d 66, 68 (1st Dep't 1986) (finding that

judgment debtor did not have an interest in property sought to be turned over).  Origuchi's

counsel argued, that although Mr. Origuchi is an officer of both GuchiMen NY and GuchiMen &

Co., he maintains no ownership interest in either company and thus Plaintiffs will be unable to

establish that Mr. Origuchi has an interest in the Citigroup account.  In other words, the only way

the Class would be successful in seizing the account would be if they can prove that Mr.

Origuchi and Ms. Owada are lying.  Given these circumstances, there is a strong likelihood that

the Class will completely lose the Turnover Proceedings and be unable to recover any money

from that account.  (*See* Exhibit A at 6-11.)

      19.     Earlier this year, the parties in the Turnover Proceeding reached a settlement in

principal, subject to this Court's approval, whereby Mr. Origuchi agreed to remit $300,000 from

the frozen account to the Class in exchange for a full satisfaction of the Judgment in this case.

(*See* Exhibit B; *see also* Dkt. No. 168.)

      20.     Given the passage of time, the impasse of all other collections efforts and, most

significantly, the very real risk that the class will recover nothing at all from the Turnover

Proceedings, we have been advised by W&S that this is likely the Class's last chance at recovering any substantial sums.

21.     If approved by the Court, this would bring the Class's total recovery to $391,523.94, or almost 50% of the original Judgment in this case.

22.     Put simply, the settlement ensures that Class Members will finally receive some compensation from this case that is more than seven years old.

23.     Judgment-Debtor Origuchi is willing to resolve the Turnover Proceeding and turnover $300,000 of the $495,793.24, only if Class Counsel provides all the Judgment-Debtors a full satisfaction of Judgment.

24.     Thus, to effectuate this resolution and implement the Class's likely last remaining chance to get paid a significant portion of their money owed, Plaintiffs have submitted to the Court a proposed Amended Judgment of $391,523.94. *See* Exhibit D.

25.     This amount reflects the total amount the Class has successfully recovered to date and includes: (1) the amounts recovered through collections efforts to date ($61,748.26); (2) the amount recovered from the Food Scope America, Inc.'s assignment to the benefit of creditors of the Judgment ($29,775.68); and (3) the amount recovered from the settlement of the Citigroup Turnover Proceedings ($300,000).

**Preliminary Approval and Reaction of the Class**

26.     In February 2019, the Court took the first step towards approving this settlement and preliminarily approved the term sheet agreement.  (Dkt. No. 169)

27.     The Court also Ordered that J&K mail and distribute notice to all class members of this proposed settlement and that such "[n]otice constitutes the best notice practicable under

the circumstances, and constitutes valid, due and sufficient notice to all persons in the Class, complying fully with the requirements of Fed. R. Civ. P. 23 […].” *Id.*

28.     On March 26, 2019, J&K mailed notice to all Class Members' last known addresses.  Per the Court's Order, Class Members had 30 days to comment or object to this settlement.

29.     The time has expired for Class Members to comment or object to the settlement and no Class Members (or other individuals) have objected.  Thus, there was clear approval of the settlement.

**Proposed Disbursement of Amended Judgment**

30.     If the amendment to judgment is approved by the Court, Class Counsel respectfully submits that the new Judgment amount of $391,523.94 should be disbursed, after the full recovery of costs and administrators' fees, in the same manner (prorated) as the Court Ordered the current Judgment to be divided.

31.     Specifically, Class Counsel respectfully that the Court Order the Judgment to be divided as follows:

|  | **Amount** | **Percentage of Judgment** |
|---|---|---|
| Total Amount Recovered | 391,523.94 | 100% |
| Attorneys' fees | $130,507.98 | 33.3% |
| Class counsels' costs and expenses | $7,943.72 | 2.0% |
| Collections attorneys' costs and expenses | $5,085.67 | 1.3% |
| Marshals Poundage Fee | $15,000.00 | 3.8% |

| Claims administrator fees | $4,080.58 | 1.0% |
|---|---|---|
| Enhancement awards | $23,417.98 | 6.0% |
| Minimum class distribution | $205,488.01 | 52.5% |

32.     These *pro rata* amounts have already been approved by the Court in the Court's final approval orde.  *See* Dkt. No. 141.  In addition, Class Counsel's costs and expenses and the Claims Administrator's fees have also already been approved. *Id*. at ¶ 12, 13, Dkt. No. 151.

33.     As approximately $228,000 will be allocated to 404 class members (by way of general distribution and enhancement awards), the average Class Member would earn more than $560 after attorneys' fees and costs.

34.     In addition, under the original Settlement Agreement in this case, the Parties had agreed on a methodology for calculating Class Members' Individual Settlement Amounts.  *See* Dkt. No. 137-1 at 3.4(B)(3)-(5).

35.     Specifically, the methodology uses Megu's payroll records to calculate the Individual Settlement Amounts.

36.     Class Counsel was never provided with these records by Defendants. However, we subpoenaed payroll records from the payroll company which we believe will be enough to use to follow the calculations originally envisioned by the Parties.

37.     Nevertheless, should these payroll records prove to be insufficient to completely calculate the Class Member's settlement amounts using the methodology set forth in the original Settlement Agreement, we respectfully request that the Court allow Class Counsel to use their discretion to allocate the Class Members' Individual Settlement Amounts as fairly and practicably as we are able to.

**Exhibits**

38.     Attached hereto as "Exhibit A" is a true and correct copy of Judgment-Debtor Origuchi's opposition to Plaintiffs' motion to turnover an account held by Guchimen LLC.

39.     Attached hereto as "Exhibit B" is a true and correct copy of the term sheet entered in the Turnover Proceeding.

40.     Attached hereto as "Exhibit C" is a proposed Order and Amended Judgment.


Dated: New York, New York                          /s/ *Josef Nussbaum*
        May 21, 2019                                  Josef Nussbaum